Good morning, Your Honors, and may it please the Court, Kathleen Sullivan for Pangong Group. Rule 4 sets forth the means for the government to notify a criminal defendant of the proceedings against him, but it does not authorize notice by any means. Rather, Rule 4 sets forth a non-exhaustive but illustrative list of the permissible means by which a criminal summons may be served. And this Court should — Sotomayor, didn't the Rules Committee reject that very argument? I mean, the plain language of the rule says, by any other means that gives notice. It did not, Your Honor. The Rules Committee did not reject that interpretation. The Rules Committee, to the contrary, put in the language after the sentence you just read. If the Rules Committee had intended the district court's interpretation that any means that gives notice suffices, it would have stopped the sentence in 4C3D Romanet 2 after the words, by any other means. It did not. It did not put a full stop there. What it did is it went on to give illustrative means by which notice could be given. And, Your Honor, let me skip right to the textual point. The textual point is that it doesn't stop at any other means. The rule as — the proposed rule as accepted gives illustrative means. And let's look at what the illustrative means are. Under Romanet 1, it's delivery on an authorized agent. And under Romanet 2, other means, it's three different means, stipulation pursuant to a foreign government's request or pursuant to an international treaty, all of which are formal legal processes in nature. That list would not extend by the eustem generis canon to some other means that didn't These canons would be really helpful to ascertain the intent of the drafters, except that we have reams of material telling us what the intent of the drafters were, and nothing suggests that they intended to limit it in the way that that canon of statutory construction would suggest. And since our job is to use these canons to discern the intent of the drafter, why would we apply that here? With respect, Your Honor, the intent of the drafters was specifically to preserve special appearances to contest service. And I would — Can you refer to the specific language? Your Honor, the — Because we do have language that says the Court should be able to take into account the appearance of counsel when evaluating a corporation's claim that it did not receive notice. Absolutely, Your Honor. And the most important point I want to make to you is that actual notice does not suffice to provide proper service. There — proper service requires not just that there be factual notice. Proper service under the amended rule requires that the notice have been given by proper means. Notice is the constitutional minimum, Your Honor, but the Rules Committee went on to require additional procedural requirements above and beyond pure factual notice. And by require, are you referring to the illustrative list? Yes, Your Honor. Because it just says, by any other means that gives notice is the — is the language. Your Honor, it's easy to see the new rule on Petition 8. I know you're looking at it. The most important textual evidence I have for you, Your Honor, it's a giant clue, is the sentence in Romanet 2 does not stop after by any other means. If the government were right and the district court were right, that all that is required is notice by any means, by all means, skywriting past the corporate headquarters in China, publication in a local newspaper in California. Why not? If they have actual notice, they can still contest other aspects. I mean, there's two different issues here. One is, is notice alone enough? And the Rules Committee seems to say it is. The second one is, is there any other reason why a court shouldn't be able to consider special appearance, and the court in this case didn't really have to address it because it deemed that to be conceded, that Penggang had actual notice. Your Honor, the most important place in the drafting history I would like to refer you to are two places. First, the government argued at ER 57 that the new rule would not destroy the historical and time-honored practice of special appearances. And the Rules Committee at ER 11 and at SER 721 adopted the government's argument. It said, we're not destroying special appearances to contest service. They will survive our new rule. And they said, for example, you could come in and contest the constitutionality of new Rule 4. You could come in and contest the retroactive application of new Rule 4 in a special appearance. Or you could come in, as we did here at ER 98 and 99, as adopted by the magistrate at SER 49 to 52, we came in to do the third of those. We came in and we said, Pan America, not the right defendant. Then why did Quinn concede that the special appearance was actual notice? Because, Your Honor, it was actual notice, but actual notice is not enough. That's the most important point I'm trying to make. The Rules Committee said notice plus. We live under the rule of law. Actual notice is not enough. We have to live by the rule, not just the constitutional minimum. And when you say that the committee said special or the rules said special, that actual notice is not enough, you're referring to the illustrative list, because they never actually said that, right? That's correct, Your Honor. But the illustrative, if the Rules Committee meant what the district court said, it would have stopped Romanet II after by any other means. But let me explain why you must interpret the – if you're going to interpret this in light of the framers' intent, you must interpret it our way. It would destroy special appearances to contest service if you adopt the district court's rule. The only to contest notice, right? I mean, the only item that the committee focused on was, do you need something more for notice? And the Rules Committee seems to have come down on, as long as you have notice, you can't contest that you had notice. Your Honor, but we can contest that service was proper even if we had notice. And let me say why special appearances will disappear. Let me – let's just go to our case. Suppose an attorney comes to make a special appearance under the list. The committee says it preserved. Suppose the attorney comes in and says, I'm specially appearing. I'm not authorized to accept a summons. I'm specially appearing to say you've – you served the wrong defendant. The government says, very nice, never mind, here's a summons on you. The attorney. And now that we're slapping the summons on you, the attorney, your client has notice. No attorney will ever come in and make a special appearance again at risk that he will be weaponized into evidence against his own client by the very fact of making the special appearance. And that is why you cannot preserve the special appearances the committee said it was preserving by affirming or refusing to grant the writ here. Let me say that again. I went through that very quickly. Our main argument is the rule preserves the time-honored practice of special appearances according to its drafters. If showing up to make the special appearance, if I show up and say, hello, I'm specially appearing to say that you served the summons on the wrong defendant, the government can serve a summons on me. Why the – I guess I don't understand what difference that made, unless you're also – unless the attorney is also representing the correct defendant. So if the lawyer makes a special appearance and says the venue is wrong, then the client has notice, the attorney's client has notice, but they can still argue venue. He can't, Your Honor. It would moot or cure the problem he's there to dispute. If the government could just say, one and done, you're here, summons on you. Or they could do it, in this case, in a subsequent summons and say, you appeared last time to say Todd Wang was the wrong person. We are now serving you because you have – notice is not enough. I want to just say I want to reserve some time for the public. I'll give you time. You give me extra time. I'll give you extra time. I have a few questions for you. Thank you, Judge Paz, because I want to be sure to answer your questions. Then I can speak more slowly. Your Honors, let me give you an alternative fallback. I want to be clear. We're asking for two alternative forms of mandamus here. What we think is the first ground for mandamus is clear legal error with respect to the interpretation of Rule 4, with respect to all defendants, attorneys who specially appeared in earlier proceedings for the sole purpose of contesting service of process. We think that, Your Honor, Judge Acuda, that Rule 4 gives a non-exhaustive list of means, and there may be many other permissible means besides the ones that are listed, but the one impermissible means is to allow service of a summons on the defendant's attorney by virtue of his previously having appeared specially to contest service of process. We're just saying we should exclude the other. Oh, absolutely. Because these are just illustrative means that the ---- Simple matter, Your Honor. What ---- You would have to rewrite this. Not at all, Your Honor. Why not? You would simply have to hold as applied to the class of attorneys who have preceded ---- I'm just reading from the Court's order setting this case for mandamus argument. You asked, does Rule 4, as amended, permit service of a criminal summons on a defendant's attorney who has previously appeared in earlier proceedings for the sole purpose of contesting service of process? As applied to that class of attorneys, you should hold Rule 4 inapplicable. Classic statutory construction. Rules are governed by the same statutory construction principles as any statute. Your Honor, you're simply, as applied, you're not rewriting it. It's illustrative, non-exhaustive. Obviously, if something is impermissible, you can exclude it by your ruling. But, Your Honors, I want to be sure you know there's an alternative narrower out here, and that is you can also grant the mandamus petition here narrowly on the clear abuse of discretion that the district court committed as applied to the facts of this case. This case involves a bait-and-switch. The attorneys especially appeared here in the earlier proceeding under the old Rule 4, reprinted in the petition at page 4. The old Rule 4, it was there was no thought that a special appearance could waive service of process or be used as evidence against the defendant. And then the new rule comes along, and there's been a bait-and-switch. You can't do that. Well, you call it bait-and-switch. It's called retroactivity, isn't it? Exactly, Your Honor. I thought they, according to my notes, the effective date of the rule was December 2016. The government then reissued the summons later that month, and then Quinn made another appearance in April 2017, so actually made a special appearance after the rule had been made effective. That's correct. Is that wrong? So they could just apply it's not retroactive. It's applied to the special appearance made after the effective date of the rule. That's correct, Your Honor. But it's retroactive in effect because what the district court does is say, well, you had a special appearance beginning under old Rule 4. It was never withdrawn. If you look at ER 98 to 99, you'll see that we went before the magistrate. We said we're here, we're specially appearing just to contest service of process. We do not have authority to accept service of process. That first special appearance was continuous. The key thing that makes this retroactive is nobody ever told us, including the Rules Committee and the government, that this new interpretation of Rule 4 to apply to service on the — of summons on the attorney who previously specially appeared, we never had any notice that could possibly be an interpretation. We could have withdrawn our appearance, Your Honor. But then he appeared again afterwards. We did, Your Honor. I guess I'm confused about why that would be retroactive. Had he never appeared before, but then there was a summons issued in December and Quinn makes an appearance in April, the — the rule would apply just as it is today. I don't dispute that, Your Honor. But let's look at the transmittal memo by which the Chief Justice sent the new rule to Congress. It's reprinted in the excerpts of record at 40 to 42. And the key language is at ER 41. The Chief Justice transmitted the new rule to Congress with the language that always accompanies rules amendments. It shall apply prospectively, and it shall apply to proceedings then pending only insofar as just and practicable. It is not just, and it was a clear abuse of discretion to find it just, to do a bait-and-switch on the very attorneys who had relied on the old rule in making the earlier special appearance. So just — we think that all attorneys who made an earlier special appearance, even after the new rule, should be immune from service of a summons on them to satisfy the rule's enumerated means. They're enumerated, they're non-exhaustive, but they are illustrative. And the Rules Committee meant something by that list. It didn't mean skywriting. It didn't mean going on television. It didn't mean publishing something in an obscure local newspaper in Des Moines. It meant other forms of service that are like the ones in the list, and this is not like the one in the list. So, Your Honor, you have two ways to go, the class of all attorneys with earlier proceedings or just us. Thank you very much. Roberts. All right. I'll give you a minute or two for a rebuttal, but let's hear from the government. Thank you, Judge Payes. I'll give you a little extra time, too, as I did for this. Oh, thank you, Judge Payes. Good morning. May it please the Court. My name is Mary Jean Chan, and I represent the United States. The writ of mandamus is an extraordinary legal remedy that is not merited in this case because the high standard has not been met. There is no clear error. The district court made no error in finding that amended Rule 4 was met. Its core objective is notice, and the defendants concede that by the government's actions subsequent to the amendment of Rule 4, the defendants have actual notice of the third superseding indictment in this case. Not only did they have notice about it, they actually specifically sent their attorneys, who initially rejected the summons, by letter of January 2017. They said, you know what? We are not in a position to convey these summonses to our clients. They did not show up on January 30th at the arraignment. And then something changed their minds. They decided that they were going to enter a special appearance after all, and they filed a third motion to quash. They didn't have to do this, and they did this with the full knowledge of the fact that it met under amended Rule 4, because they participated in the rulemaking process. By a letter of 2015, the Quinn Emanuel lawyers specifically went to the advisory committee and said, don't pass these amendments, because if you do, our mere presence in court will conclusively establish service is effective under amended Rule 4. So don't do this. The advisory committee said, we think that's appropriate. You can still have special appearances to contest things like the constitutionality of Rule 4, the retroactivity of Rule 4, but you cannot make a special appearance to challenge notice, because that is the objective of changing these rules, which were out of sync with the federal rules of civil procedure, and out of sync with the rules that apply to individual defendants. So you're saying that Quinn could have argued constitutionality and retroactivity at this stage, or only after a conviction and an appeal? I think that they are not entitled to mandamus. You're absolutely right, because Boundman Factor 1 for mandamus requires them to show that they have no other means of relief, and they absolutely can make all these challenges on appeal after there's a final judgment. But according to what they have to say to the court, they are entitled to no right up front, so you don't needlessly go through all these procedures. And you're saying that's not a factor here? No, it's not a factor. As the Seneville court said in the Seventh Circuit, what we're talking about is service of process, which is maybe a branch of personal jurisdiction. And those are regularly adjudicated. And then when they're adjudicated, if the defendant isn't happy with it, they can appeal. This is a novel issue, right? It's never been addressed before, correct? This is a case of first impression, Your Honor. So that does meet the fifth Boundman Factor, but that's the only factor. It does strike me a little bit odd, just to take up one example, that Ms. Sullivan alluded to. But it strikes me a little bit odd that if a lawyer makes a special appearance, she said, you got the wrong defendant, and the U.S. attorney says, well, here's the summons and complaint. Everything's fixed. I mean, I've been around a long time, and I've never seen that happen. It's highly unusual. It's an odd situation. It's a change that was decided that was appropriate by the Rules Committee. But they don't really address it head on. Well, they do in the sense that they say, well, so Quinn Emanuel was concerned about this, and they brought it to the Rules Committee. The committee, and this is all laid out in Appendix 3 to the government's brief, said specifically that this is appropriate. And why? Because there's no institutional interest in allowing a defendant to feign that they don't have notice. If they're sending lawyers into court, they have notice of the suit. There's no doubt, and they're not even contesting this. They're trying to say that they should still have a shield from the initiating of the proceedings. And this is a very limited question. They can still defend on the merits in all kinds of ways, but it's got to be within the context of the prosecution having initiated. They can't put up a shield and say, this prosecution that is based on charges that have been- And what can a lawyer do? Anything? Probably, I guess, not appear, correct? They could not appear, and in fact- The option, don't appear. They could if there are certain consequences. But the Rules Committee specifically said that, yes, it's been the case for a long, long time that there has been this loophole for foreign defendants. This loophole is not consistent with the global economy. You have situations where defendants, foreign companies in civil suits, have to come in because courts can order that by skywriting or by publication or by whatever, if the circumstances warrant it, that they have notice by that way. That is a provision under Rule 4 of the Civil Rules of Procedure. The Civil Rules of Procedure abolished special appearances in 1966. The Criminal Procedure Rules didn't catch up until 2016, the end of 2016. But they did catch up eventually. And this is what we have now, which is amended Rule 4. And so it is broad, and the rules, the text of the rule is broad. It's open-ended. It simply says that any other means that provides notice. And the Rules Committee, the Advisory Committee, specifically said, we're not going to have the court specifically authorize a particular means of providing notice. Because, you know what, this is how the executive branch decides what to do, even if it means that in a particular situation, they might violate foreign law or violate international treaties. Let me ask you, under what circumstances would the government attempt to utilize the other means, stipulation by parties, undertaken by a foreign authority, permitted by an applicable international agreement? Why would the government even resort to those if it's... Those are preferred methods because they're presumed to provide notice. The other means puts the government at risk because you have to actually prove that they do provide notice. In this case, how... But if a lawyer comes into court and says, I moved to Quash, I'm only making a special appearance, boom, you got him. That's right. That's right. And that's what the intention of the Rule 4 was because you have companies, for example, like the defendants, which have now been found by two separate grand juries in three indictments over four years in cases that are pending six years, who have been able to refuse to come into court. Is there anything to the lawyer-client relationship there that is in any way impaired or...? No. I mean, I suppose you can say that one argument has been taken away, so Quinn Emanuel can't go in and charge for making a motion to Quash on the basis of notice. But that's like if, you know, the Supreme Court rolls back the Fourth Amendment and it takes away one argument that Quinn Emanuel could bring in for a motion to suppress. That doesn't impair the relationship. It changes what the representation can consist of. But that's not the government coming in and interfering with the relationship between the client and the attorney. In this case, you have the clients who, by the declarations of Quinn Emanuel, actually consulted with two other law firms after receiving the summons and notice of it. And after that, they specifically made a strategic decision to discharge Quinn Emanuel into court to make a third motion to Quash. And this idea that, by the way... That's the one in 2017. In 2017, after the amendments have passed. And, by the way, the whole notion that because they made their first special appearance in 2012, they were somehow bait-and-switched or required to come in in 2017 is just false. There is no reason they had to come in, and, in fact, they didn't come in initially. They sent a letter to the government saying, we're not sending these summons on to our clients. Their clients did not show up to the arraignment. And then they made a strategic shift in decisions and they decided to come in and make a motion to Quash. So it was not a foregone conclusion that by serving Quinn Emanuel's attorneys, that somehow service was definitely going to be or automatically affected under amended Rule 4. That is just false. However, the government had the right, under Rule 4, to attempt this means of service that is supported by the open-ended language of the text. But what if Quinn Emanuel just didn't show up? Ever? What are the consequences? Is there going to be a trial in absentia? That is one potential consequence, and the Rules Committee actually was very concerned about this, which is why it added 4A. What are the other consequences? You can have a trial in absentia, and nobody shows up except for the judge and the prosecution, right? You can have a contempt order, Your Honor. You can have potential parallel proceedings in civil. So on contempt order, then how would you serve that order? Well, you could try to serve it again the same way that you did. There are... And they don't show again. Correct. And then what happens? You do a contempt squared order? What do you do? There may be limits to what can be done judicially, but there are, and this was contemplated by the Rules Committee, extrajudicial, also consequences that can be attendant to a company, a foreign corporation, that wants to do business in the United States, wants to act with the United States, but then just ignores judicial orders and the requirements of the government. And there would be a basis thereby to enforce those actions. Again, those are things that are concerned sort of the executive branch and their decision. But for the very narrow question that is presented to this Court today, the fact is that Rule 4 authorized the means of service. And it was more than, it was just, it was practicable, as the District Court found, to enforce this in this case. Give me a list of the things that can be contested under amended Rule 4 after a special appearance. Okay, you have the wrong defendant. What else can be contested? So the things that were specifically contemplated by the Advisory Committee were that by a special appearance, you could continue to make a constitutional attack on Rule 4, you could object to the retroactive application of the amendment, or you could claim that the institutional defendant has been dissolved. So those are the things that the Advisory Committee said, yes, notice, you can no longer do. But you can't come in and complain about lack of notice. You can't complain about lack of notice. And that was the purpose. Or you can't complain that you've served, that the government served the papers on the lawyers. No, you can't. Can you challenge before trial the constitutionality of notice by special appearance? I'm sorry, Your Honor, what do you mean by that? Well, can they challenge before, I mean, we haven't had a constitutional argument here, and that is that the notice violates due process. Can that still be done before trial? Yes, I believe so, which is that they can come in, but this is important to note, which is that the defendants have not made a constitutional claim. They've made a statutory interpretation claim about Rule 4, and they've made an argument that it is unjust and impracticable to apply it. Those things, I think, are, I think, very clear under the rules, text, and legislative history. Well, are you saying that challenging it on the basis of retroactivity is just gonna move because there was a second special appearance, and then it's not being applied retroactive after the amendment, correct? Right, it's actually a... Is that moot? You're saying that retroactive... I don't think it is a retroactive application, and it is actually the third motion to quash. There were multiple, many, many, many ways in which the government tried to serve these defendants over the past six years. So you're also saying that there is absolutely no significance whatsoever that Quinn actually acknowledged and conceded notice. That's irrelevant, it doesn't matter, because once they showed up with special appearance, it was automatically notice. Well, I think that that is certainly very good evidence that there's notice, but of course, it's very, I think, relevant that they've conceded it. And again, these are defendants that not only conceded notice, but they actually, they had one of the deputy heads of their legal department in China draft notice, draft declarations responding to government filings. They've participated in this prosecution, actually a number of years ago in 2011, two of the defendants put up $1.5 million in bonds for material witnesses who ultimately absconded. So these are defendants who I think are justly brought into this case. The prosecution is absolutely initiated now, and they can litigate within the context of that. But the equities lie squarely in favor of the government, and because of that, and because really four out of the five Bauman factors are not met, we asked this court to deny the petition for writ of mandamus. I have one last question for you. Yes. Could the Quinn Emanuel lawyers show up in court and say, we don't represent them anymore? Sure. What happens? Well, then there might be an evidentiary finding or evidentiary sort of process. If the government says, no, actually we have letters, we see that we saw them walking together arm in arm, then maybe we would be able to convince the district court that actually they do represent them. But if it were in fact the case that they don't represent them, I think that the government would have to find a different way to serve, because it wouldn't be a means that provided notice, which is what is required under Rule 4. No, they'd have to say, we didn't represent them at the time we made the special appearance. They can't come in afterwards and remake the thing. I mean, judge it by the time they made the special appearance not the time they said, we don't represent. Right, and again, the special appearance is they've made three, they've come in each time. They're trying to say that it was a continuous special appearance. There's no authority for that. The local rules don't provide for special appearances in perpetuity. And in fact, in the Virginia case, in the dot-com case, the Quinn Emanuel firm came in. Each time they made a special appearance, they made a specific motion to appear in that motion. And the district court either granted or denied the ability for them to make that special appearance. So we ask this court to deny the writ. Thank you. Okay, Ms. Sullivan, I'll give you a minute plus. Just two points, Your Honor. Judge Paez, you're absolutely right. There will never be a special appearance again to contest the three permissible reasons because the minute the lawyer shows up at the podium and says, hi, you had the wrong defendant, government will come across the room, slap a summons on the lawyer and say, that's cured. It's moved. We have now served you. That gives notice. That is not the rule of law and that is not a permissible interpretation of rule four. You're absolutely right. It puts pressure on the attorney-client relationship. We did the responsible thing. We showed up. We didn't abandon our client. We showed up and we said special appearance only. Why didn't you make a constitutional argument? Why didn't, in this case, Your Honor, we think there are strong, you should interpret the rule to avoid the Sixth Amendment questions, putting the lawyer to a Hobson's choice between not showing up and risking sanctions for his client. You heard my friend from the government say. But how many times have we heard alternative arguments? You can do this by statutory interpretation. But failing that, the notice, if you say it's okay, is, it violates due process. May I answer, Your Honor? Yes. Don't need to get to the constitutional question because the text is clear. The text enumerates things it wouldn't have needed to enumerate if notice was enough. If I leave you with one point, is notice is necessary but not sufficient under the rule of law. The rule of law requires appropriate means. Service of a summons on an attorney who has specially appeared earlier simply to contest service is not the rule of law. You should grant the mandamus either broadly or narrowly if we've requested. Thank you, Your Honor. Thank you, counsel. We appreciate your arguments in this interesting case. The matter is submitted at this time.
judges: Murphy, Paez, Ikuta